Argued and submitted February 10, affirmed on appeal and cross-appeal May 20, petition for review denied September 29, 1998 (327 Or 554)

Donald L. STEVENS
and Wave J. Stevens,
husband and wife,
*Appellants - Cross-Respondents,*

*v.*

Terry FOREN
and Hildur Foren,
*Respondents,*

*and*

John or Jane DOE,
as personal representative of
the Estate of Milton Foren, deceased,
*Defendant,*

*and*

Arthur P. LINDSAY
and Linda L. Lindsay,
husband and wife,
*Respondents - Cross-Appellants.*

(CV 96 063; CA A96560)

959 P2d 1008

Michael Mills argued the cause for appellants - cross-respondents.

Eli Stutsman argued the cause and filed the brief for respondents Terry Foren and Hildur Foren.

John W. Lundeen argued the cause and filed the briefs for respondents - cross-appellants Arthur P. Lindsay and Linda L. Lindsay.

Before De Muniz, Presiding Judge, and Haselton and Linder, Judges.

LINDER, J.

## LINDER, J.

This is an action seeking interpretation of a contractual right of first refusal to buy real property and specific performance of that right. The trial court granted judgment for defendants, and plaintiffs appeal. Defendants Lindsay cross-appeal the denial of their request for attorney fees. We affirm on both the appeal and the cross-appeal.

The property in question is a 40-acre parcel in Yamhill County bordering property owned by plaintiffs, the Stevens. In 1994, the Stevens and the owners of the neighboring property, the Forens, negotiated an easement agreement. As part of that agreement, the Forens granted to the Stevens a written right of first refusal to purchase the Forens' property. To invoke the right of first refusal, the Stevens were required to "match all terms of the offer, including, without limitation, the amount of earnest money tendered and the date of closing."

At that point in time, the Forens were anticipating developing and residing on the property in question. To that end, they had established a vineyard on the property, obtained building permits, installed a septic tank, and laid a concrete foundation for a residence. In the fall of 1995, however, the Forens changed their minds and decided to sell the property to friends, the Lindsays. They and the Lindsays negotiated the terms of the sale and entered into an earnest money agreement. Included in its terms was a requirement that the Lindsays "maintain the existing building permit and * * * complete a home on the property within 18 months of transfer and recording." The agreement also specified that the Lindsays would pay for the property with monthly payments of principal and interest for five years, followed by a balloon payment of the principal balance. The earnest money agreement explicitly stated that it was subject to the Stevens' right of first refusal. Consistent with the right of first refusal, the Forens presented the Stevens with the earnest money agreement and gave them the opportunity to match it.

Through counsel, the Stevens advised the Forens that they would exercise their right of first refusal and purchase the property. The Stevens indicated that they were willing to maintain the building permits for the life of the contract. They were unwilling, however, to agree to the term requiring completion of the residence. Nor did they agree to the payment schedule. The Stevens instead offered to tender the full price in cash at the time of sale.

After the Stevens responded, the Forens amended the earnest money agreement with the Lindsays. The amended agreement provided that the Lindsays would pay only interest (rather than principal and interest) for five years, followed by a balloon payment of the entire amount of the principal. It prohibited prepayment of the principal. The amended agreement continued to require completion of a residence within 18 months. The Stevens were again given the opportunity to meet the terms of the agreement. They indicated that they were willing to accept the payment terms, but they remained unwilling to agree to the condition that they complete a residence on the property in 18 months.

Negotiations reached a standstill. The Forens sent a letter to the Stevens on January 22, 1996, imposing a 10-day deadline for them to agree to the requirement. When the Stevens did not timely respond, the Forens sold the property to the Lindsays.

The Stevens filed this action, seeking declaratory relief and specific performance. The complaint essentially alleged that the requirement to build a residence was not reasonably within the contemplation of the parties in negotiating the right of first refusal and that the Stevens therefore did not have to match that term to exercise their right.[1] The complaint also alleged that the Stevens did not have to meet the modified terms for payment of the purchase price (*i.e.*, interest for five years, followed by a balloon payment of all principal) because they effectively had exercised the right

---

[1] More specifically, the complaint alleged that the earnest money agreement negotiated between the Forens and the Lindsays was not bona fide and that the requirement of completing a residence on the property within 18 months was "unreasonable and outside the scope of [the Stevens'] duties."

of first refusal and offered cash before negotiation of the amended earnest money agreement. Accordingly, the Stevens asked the court to declare that they had exercised the right of first refusal and to grant specific performance of the right, thus permitting them to purchase the property.[2]

The trial court approached the dispute between the parties as turning on whether the requirement to build a residence was negotiated in good faith and was a legitimate condition on the sale of the property. The court found:

> "Foren wanted the residence built because he felt that the purchase price of $187,500 was predicated on a residence being approved and built on the property and he wanted to secure the balance of the purchase price with a residence on the property. Lindsay agreed to this condition in an arm's length transaction because he also wanted to build his home on the property."

The court therefore held that the requirement to build a home was negotiated in good faith between the parties and that the Forens "could and did legitimately condition the sale upon enhancing the property's value for [their] own benefit." The Stevens, the court concluded, were entitled to purchase the property on those same terms, but they were not free to renegotiate those terms. The court held that when the Stevens declined to meet that term, the right of first refusal was extinguished and, thus, the Stevens were not entitled to specific performance. The court awarded attorney fees to the Forens as the prevailing party pursuant to the easement agreement but declined to award them to the Lindsays, ruling that the Lindsays were not parties to the right of first refusal and therefore were not entitled to attorney fees under the contract.

On appeal, the Stevens assert that the right of first refusal should not be interpreted to require them, in matching the terms of the earnest money agreement, to have to agree to complete a residence on the property. They advance several arguments in support of that contention, which we understand to distill to three contentions: (1) that the plain

---

[2] Those are the allegations of the complaint as framed by the second (and last) amended complaint, which omitted previously pleaded claims to quiet title and rescind the sale between the Forens and the Lindsays.

language of the right of first refusal requires the Stevens only to match terms pertaining to real property or those that normally and reasonably pertain to real property, and this is not such a term; (2) that this is not a term reasonably within the contemplation of the parties in negotiating the right of first refusal; and (3) that the Forens breached their duty of good faith and fair dealing in requiring construction of a residence.[3]

■ In the absence of ambiguity, we construe the words of a contract as a matter of law, which in turn means that the question of the contract's meaning is for this court to determine. *Eagle Industries, Inc. v. Thompson*, 321 Or 398, 405, 900 P2d 475 (1995). Here, we have no difficulty concluding that the right of first refusal is unambiguous. It states: "In order to match the offer, [the Stevens] must match all terms of the offer, including, without limitation, the amount of earnest money tendered and the date of closing." The words the parties used are plain and encompassing: The Stevens, to invoke their right, must "match *all* terms * * * *without limitation*," of any other offer to buy the property that the Forens are prepared to accept. Contrary to the Stevens' assertion, we find no basis in the language to limit the right of first refusal to terms that are ordinary and commonplace in real estate purchases. *See Aylett v. Universal Frozen Foods Co.*, 124 Or App 146, 861 P2d 375 (1993) (customary practice in potato industry as it relates to release of right of first refusal does not control over actual language of the parties' contract). Nor do we find any basis in the language to go behind the contract to examine whether the parties intended something other than what the contract provides.

■ That is not necessarily the end of the inquiry, however. Every contract contains an implied covenant of good faith and fair dealing. *Uptown Heights Associates v. Seafirst*

---

[3] The Stevens also argue that the term requiring completion of a residence is too vague and indefinite to be enforceable, or alternatively is an unenforceable restrictive covenant. They do not identify how those theories fit with their pleadings. At least one of those arguments may have been raised after trial, by way of motion for judgment notwithstanding the verdict and for new trial. No error is assigned to the court's ruling on that motion. The Stevens have neither properly presented those arguments on appeal nor demonstrated they were adequately raised and preserved. ORAP 5.45. We therefore do not address those additional contentions.

*Corp.*, 320 Or 638, 645, 891 P2d 639 (1995). The implied covenant serves to protect the objectively reasonable contractual expectations of the parties. *Id. Accord Slover v. State Board of Clinical Social Workers*, 144 Or App 565, 572, 927 P2d 1098 (1996). Here, the trial court understood the gravamen of the Stevens' claim to go to whether that implied covenant was breached, thus relieving the Stevens from matching all terms of the earnest money agreement. We understand that to be the central point of their arguments on appeal as well.

■■ In examining whether, on the basis of a breach of the duty of good faith and fair dealing, the Stevens should be relieved from meeting the term requiring completion of a residence, the focus is on the objectively reasonable expectations of the parties. *Tolbert v. First National Bank*, 312 Or 485, 494, 823 P2d 965 (1991). Significantly, the duty of good faith and fair dealing cannot contradict an express contractual term, nor does it provide a remedy for an unpleasantly motivated act that is permitted expressly by contract. *Pacific First Bank v. New Morgan Park Corp.*, 319 Or 342, 352-53, 876 P2d 761 (1994); *U.S. National Bank v. Boge*, 311 Or 550, 567, 814 P2d 1082 (1991). Thus, the terms of a contract help serve to define the objectively reasonable expectations of the parties. *Uptown Heights Associates*, 320 Or at 645. As a corollary to that proposition, a party invoking an express contractual right does not, merely by doing so, violate the duty of good faith. *Id.*

■ By its very language, the right of first refusal at issue contemplated that the Forens would be entitled to negotiate a sale of the property on whatever terms suited them and that the Stevens' only right was to have the first opportunity to match those terms. Given the breadth of the language "match *all* terms * * * *without limitation*" it is difficult to see how the objectively reasonable expectations of the parties can be said to encompass anything other than full latitude on the Forens' part to negotiate a sale on whatever terms they might choose.

■ Moreover, even if we were to assume that there would be a violation of the duty to deal fairly and in good faith if the Forens negotiated a sale on terms designed to frustrate the Stevens' right of first refusal, rather than on ones that

reflect the Forens' legitimate interests as sellers of land,[4] there was no such breach here. The trial court found that the requirement of completing a residence on the property served both the Forens' and the Lindsays' legitimate and genuine interests and that it was negotiated at arm's length. That finding is binding on us unless we can declare affirmatively that there is no evidence from which the court could have drawn that conclusion. *Illingworth v. Bushong*, 297 Or 675, 694, 688 P2d 379 (1984); ORCP 62 F (findings by trial court have the same dignity as those by jury).[5]

The evidence is ample to support the trial court's findings. The record establishes that the $187,000 sale price[6] reflected the property's value if its use included a residence, that the Lindsays wanted to build a residence on the property, and that the Forens wanted a home completed on the property so that the property would maintain its value in the event they had to foreclose on the trust deed. The Forens also were concerned that land use laws and regulations might change to prohibit building a residence in the future. By requiring construction of a residence within the specified 18-month period, the term ensured that the property's value as residential land would be realized before possible land use changes and thus that it would not lose value during the time that the Stevens were at risk of a default on the payments.[7] Consequently, there is no basis to disturb the trial court's

---

[4] *See Lee v. Mitchell*, 152 Or App 159, 174, 953 P2d 414 (1998) (implied duty of good faith and fair dealing can be breached by majority shareholders making decisions against the interests of minority shareholders for no legitimate business reason).

[5] It is worth noting that plaintiff sought both an interpretation of the contract and specific performance. Here, we are concerned first with the contract's meaning, and our standard of review is consequently highly deferential to the trial court's factual findings that bear on the question. Our interpretation of the contract does not take us to the second issue of specific performance, but if it did, we would review any relevant factual determinations *de novo. Dewing v. Western Smelting & Metals, Inc.*, 135 Or App 397, 400, 898 P2d 224, *rev den* 322 Or 167 (1995).

[6] The full price of the Lindsays' purchase was $210,000, with $187,000 specified for the real property and $22,500 for the vineyard equipment. The Forens agreed that the Stevens' right of first refusal related only to the real property and that they were not obligated to purchase the vineyard equipment.

[7] Rather than accept the full payment of the negotiated price at the time of the sale, the Forens structured the sale so that the principal would not be paid for five years. They did so because they predicted a lowering of the capital gains tax rate during that time frame, a prediction that proved correct.

findings that the requirement of completing a residence was a legitimate term of the earnest money agreement and was negotiated in good faith by the Forens and the Lindsays.[8]

■    Thus, the Stevens are not excused from matching the terms of the earnest money agreement negotiated between the Forens and the Lindsays. When the Forens notified the Stevens of the terms of the earnest money agreement and gave them an opportunity to exercise the right of first refusal, the Forens essentially were offering to sell the property to the Stevens on exactly the same terms. *Doughty Appliance, Inc. v. Pruitt*, 282 Or 757, 758, 580 P2d 186 (1978). The Stevens' refusal to agree to complete a residence in 18 months was a rejection of the offer, which extinguished their right of first refusal. *Id.* The trial court, therefore, properly declared that the right of first refusal had been extinguished and denied specific performance of that right.

■    On cross-appeal, the Lindsays assign error to the trial court's failure to award them attorney fees as prevailing parties. We review a trial court's determination of entitlement to attorney fees for errors of law. *Spectra Novae, Ltd. v. Waker Associates, Inc.*, 140 Or App 54, 59, 914 P2d 693 (1996).

■    The easement agreement negotiated between the Stevens and the Forens, which contains the right of first refusal, provides that in an action between the parties to remedy a breach or to rescind, enforce, or interpret the agreement, the prevailing party shall recover its reasonable attorney fees. In denying the award to the Lindsays, the trial court concluded that the right of first refusal was personal to the Forens and the Stevens and that the Lindsays were not sued as parties to the agreement. We agree.

---

[8] The Stevens also argue that the trial court should have allowed them to exercise the right of first refusal by paying cash instead of meeting the payment terms negotiated between the Forens and the Lindsays. The Stevens contend that those payment terms were renegotiated as part of the amended earnest money agreement, at which point they had effectively exercised the right of first refusal, and that renegotiation of the payment terms was a breach of the Forens' duty to deal fairly and in good faith. We do not reach that issue, because we conclude that the rejection of the term requiring completion of the residence extinguished the right of first refusal.

Under ORS 20.096(1), a trial court in a contract action may award attorney fees to a prevailing party pursuant to a provision for fees in the contract. Under ORS 20.097(1), such a right to attorney fees extends not only to original parties to a contract but also to assignees of the parties. The Lindsays argue that, having purchased the property from the Forens, they qualify as assignees. The flaw in their argument, however, is that they were not sued in that capacity, nor could they have been.

The right of first refusal contained in the contract is expressly declared to be personal to the Forens and the Stevens. This action involved only that right. Thus, by definition, insofar as the right of first refusal is concerned, the only parties that could be sued *on the contract* were the Forens and the Stevens. The Lindsays qualified as parties whose interests might be affected by the declaration the Stevens sought and thus were proper defendants. ORCP 29. But given the personal nature of the right of first refusal as to the Lindsays, this was not an action "on the contract" within the meaning of ORS 20.097 (1). Consequently, *Golden West Insulation v. Stardust Investment Co.*, 47 Or App 493, 615 P2d 1048 (1980), on which the Lindsays rely, is inapposite. That case stands only for the proposition that one who is sued on the contract as an assignee has an entitlement to attorney fees equal to that of the signatory parties. *Id.* at 510-12. The Lindsays were not in that position. The trial court correctly denied them attorney fees.

Affirmed on appeal and cross-appeal.