Argued and submitted April 3, affirmed September 13, 2000

Larry H. ZYGAR
and Margaret L. Zygar,
husband and wife,
*Appellants,*

*v.*

Richard E. JOHNSON,
*Respondent.*

(16-98-08994; CA A105018)

10 P3d 326

G. David Jewett argued the cause for appellants. With him on the briefs was Thorp, Purdy, Jewett, Urness & Wilkinson, P.C.

Donald J. Churnside argued the cause for respondent. On the brief were Sheryl Hansen Baker and Gaydos, Churnside & Baker, P.C.

Before Landau, Presiding Judge, and Linder and Brewer, Judges.

LINDER, J.

## LINDER, J.

In this action on an earnest money agreement for the sale of property, the trial court granted defendant buyer's motion for summary judgment against plaintiffs sellers' claim for breach of contract based on buyer's refusal to complete the sale. Sellers appeal. We review the summary judgment record in the light most favorable to sellers to determine whether there are any genuine issues of material fact and whether buyer was entitled to judgment as a matter of law. ORCP 47 C; *Jones v. General Motors Corp.*, 325 Or 404, 420, 939 P2d 608 (1997). We affirm.

The following facts are relevant to this appeal. On November 13, 1997, buyer and sellers entered into a contract pursuant to which buyer was to purchase sellers' property in Springfield, Oregon. On the first page of the agreement, under the caption "SPECIAL CONDITIONS," buyer's realtor entered a handwritten condition stating, "SUBJECT TO PURCHASER'S APPROVAL OF A PEST & DRYROT REPORT." On the second page of the agreement, under the caption "PEST CONTROL INSPECTION REPORT," there was a printed paragraph with handwritten checkmarks, as follows:

" X BUYER __ SELLER X_ SHALL HAVE __ SHALL NOT HAVE __ HAS HAD THIS PROPERTY INSPECTED BY A LICENSED PEST CONTROL INSPECTOR for substructure damage caused by infestation of wood destroying pests or organisms, obtain recommendations for corrective work and pay the initial inspection fee. A copy of all such reports shall be provided to both Buyer and Seller at the time that the report is provided by the inspector. Property inspection shall be ordered within THREE (3) days after Seller's acceptance of this offer and completed within TEN (10) days after Seller's acceptance of this offer. Buyer shall give Seller written approval or disapproval of the inspection within SEVEN (7) days of receipt of the report. If Buyer gives written disapproval, this transaction shall be terminated UNLESS Seller notifies Buyer in writing within SEVEN (7) days thereafter of Seller's agreement to pay for the work recommended by the report. If Seller is unable or unwilling to pay for the work recommended in the inspection report, but Buyer agrees to pay for the work to be done,

the transaction shall proceed. IF BUYER WISHES TO HAVE ADDITIONAL PROPERTY INSPECTIONS MADE, THEY SHALL BE SPECIFIED AS PART OF THIS AGREEMENT."

The property was inspected on November 25, 1997. Buyer was present for the inspection and discussed the condition of the property with the inspector, including possible water-related problems that the inspector identified. During the weekend of November 29, buyer's realtor informed sellers' realtor by telephone that buyer was no longer interested in the property. In that conversation, buyer's realtor indicated only that the "problem" was that "[buyer's fiancée] did not like the house." On December 1, buyer's realtor sent a letter to sellers' realtor indicating that buyer was terminating the contract because buyer was "unwilling" to approve the pest and dry rot report, the preliminary title report, or the covenants, conditions and restrictions. On December 18, buyer's attorney sent a letter to sellers' attorney setting forth buyer's reasons for declining to approve the pest and dry rot report, including buyer's lack of agreement with the repairs recommended in the report, buyer's concern that the report did not adequately address "drainage repairs," and the "thoroughness" of the report. Buyer's attorney asserted that the report "create[d] substantial questions as to the nature and extent of damage to the house in addition to the cause of that damage." On December 29, buyer's attorney again informed sellers' attorney by letter that buyer was "not willing to accept the report and wishes to terminate the earnest money [agreement]."

Sellers initiated this action for breach of contract, alleging that buyer "repudiated the contract and refused to complete the purchase of the property as required by the contract." Sellers sought the difference between the price that buyer had agreed to pay for the property and the amount for which sellers eventually sold the property to another buyer. Buyer counterclaimed for return of the earnest money.

Following unsuccessful arbitration of the parties' claims, buyer moved for summary judgment on the breach of contract claim. Buyer contended that, under ORS 42.270, the

handwritten provision specially conditioning the sale of the property on buyer's approval of the pest and dry rot report was unambiguous and controlled over the printed provision giving sellers the right to, in effect, cure buyer's disapproval of the report by paying for work recommended in the report. Relying on *Stevens v. Foren,* 154 Or App 52, 959 P2d 1008 (1998), buyer also argued that any duty of good faith and fair dealing implied in the contract could not contradict an express contract term and that he therefore did not violate that duty. Sellers filed a cross-motion for summary judgment on their claim, arguing that the printed provision controlled because it was more specific and that, if the contract was ambiguous, it must be construed against buyer because he or his agent drafted it. In addition, sellers argued that there were factual questions regarding whether buyer invoked the handwritten provision in an objectively reasonable and good faith manner. Relying on *Columbia Christian College v. Commonwealth,* 286 Or 321, 594 P2d 401, *reh'g den* 286 Or 669, 596 P2d 554 (1979), the trial court granted buyer's motion, denied sellers' motion, and entered summary judgment in favor of buyer.

On appeal, sellers argue that the trial court erred in granting buyer's motion for summary judgment because the contract is ambiguous as to whether buyer's disapproval of the inspection report permitted him to terminate the contract or whether, instead, buyer was obligated to complete the purchase if sellers paid for work recommended in the report. Therefore, sellers assert, there are questions of fact as to the contract's meaning and a reasonable jury could find that the parties intended for the "more detailed or particular" printed provision to control. Sellers also argue that there are questions of fact as to whether buyer exercised his right to terminate the contract based on his disapproval of the pest and dry rot inspection report in good faith and specifically in relation to the inspection results. In particular, sellers contend that a reasonable jury could conclude that buyer's disapproval of the report was a "pretext" and that buyer's "real motivation" for terminating the contract was that his fiancée did not like the property.

In response, buyer again argues that the handwritten "special condition" is unambiguous, that it controls over

the printed provision, and that he therefore had an unqualified right to terminate the contract based on his disapproval of the pest and dry rot report. Regarding the duty of good faith and fair dealing, buyer responds that other possible sources of dissatisfaction with the transaction did not preclude a good faith exercise of the handwritten provision making sale of the property subject to his approval of the pest and dry rot report and that his duty of good faith could not "cancel" that express provision.

We begin by construing the contract to determine the parties' rights and obligations upon buyer's disapproval of the pest and dry rot report. We follow the analysis described in *Yogman v. Parrott*, 325 Or 358, 361, 937 P2d 1019 (1997), the first step of which is to examine the text of the disputed provision in the context of the document as a whole. If the text's meaning is unambiguous, we decide the provision's meaning as a matter of law. *Id*. Alternatively, if the provision is ambiguous—that is, if it has no definite meaning or is capable of more than one sensible and reasonable interpretation in the context of the agreement as a whole—we examine extrinsic evidence of the parties' intent. *Id*. at 363-64; *Quality Contractors, Inc. v. Johnson*, 139 Or App 366, 370, 911 P2d 1268, *rev den* 323 Or 691 (1996). Finally, if the meaning of a disputed contractual provision remains unclear after those first two steps, we may resolve the contract's meaning by resort to applicable maxims of construction. *Yogman*, 325 Or at 364-65. *See also Roe v. Doe*, 161 Or App 477, 487-88, 984 P2d 344 (1999), *rev den* 329 Or 651 (2000) (setting out analysis).

The portion of the contract at issue in this case is the handwritten provision. By its own terms, it is unambiguous: it makes the sale of the property "subject to" buyer's approval of the report. Something that is "subject to" something else is "dependent on" the latter for its "final form, validity, or significance." *See Webster's Third New Int'l Dictionary*, 2275 (unabridged ed 1993) (defining "subject"). "Approval" means "the act of approving"; to "approve" is "to judge and find commendable or acceptable * * * have or express a favorable opinion or judgment of * * * to express often formally agreement with and support of or commendation of as meeting a standard." *Id*. at 106. *See also Morasch Meats v. Western*

*Boxed Meats Distributors,* 157 Or App 253, 260, 971 P2d 426 (1998), *rev den* 328 Or 594 (1999) (court gives words of an agreement their common or ordinary meaning). Those definitions suggest that, under this contract, completion of the sale was dependent on buyer's acceptance of the pest and dry rot report and that, in the absence of his acceptance of it, he was entitled to terminate the contract. Considering only the handwritten provision establishing the special condition, sellers' willingness to pay for work recommended in the report is of no legal consequence.

██ Sellers, however, rely on the printed provision relating to the inspection report as creating an ambiguity in regard to the parties' rights under the contract because the provision purports to allow sellers to avoid termination of the contract if they agree to pay for work recommended in the report. Sellers would be correct that the two provisions give rise to an ambiguity if there were no basis on which to choose between them. By statutory directive relating to the interpretation of the text and context of a contract, however, where a contract consists partly of written words and partly of a printed form, to the extent the two are inconsistent, the written—or, as the case may be, handwritten—words control. ORS 42.270. Thus, as a matter of law, the handwritten provision supersedes the printed one in this case.[1]

In summary, based on the text and context of the handwritten provision, we conclude as a matter of law that the contract unambiguously entitled buyer to decline to complete the purchase based on his disapproval of the pest and dry rot report, regardless of sellers' willingness to pay for work recommended in the report. The trial court correctly concluded that the contract's meaning did not present a factual question precluding summary judgment. *See Steele v. Mt. Hood Meadows Oregon, Ltd.,* 159 Or App 272, 280, 974

---

[1] As previously noted, the printed provision relating to the pest and dry rot inspection contained handwritten checkmarks. Even assuming that ORS 42.270, relating to "written words," applies to handwritten checkmarks, that circumstance would not alter our conclusion because the checkmarks merely indicate which party had the obligation to obtain and pay for the inspection. That and other portions of the printed provision that do not conflict with the handwritten provision—including portions relating to timing of the inspection and distribution of the report—remain in force. *See* ORS 42.230 (if possible, such construction is to be adopted as will give effect to all provisions of contract).

P2d 794, *rev den* 329 Or 10 (1999) (where an arguable ambiguity in a contract is eliminated by applying a principle of contract construction, the contract's meaning is not a question of fact precluding summary judgment, but instead is an issue to be resolved as a matter of law).

We turn to sellers' argument that there is a genuine issue of material fact as to whether buyer acted in good faith in exercising his right to terminate the contract based on his disapproval of the pest and dry rot report. *See Elliott v. Tektronix, Inc.*, 102 Or App 388, 396, 796 P2d 361, *rev den* 311 Or 13 (1990) (party can breach duty of good faith without also breaching express provision of contract). Sellers argue that a factfinder could find that buyer's "actual reason for rejecting the [c]ontract had nothing to do with" the report. In particular, sellers rely on evidence that, when buyer's realtor first discussed the matter with sellers' realtor, buyer's realtor explained that buyer no longer wanted to purchase the property because his fiancée did not like it. Sellers also point to buyer's fiancée's deposition testimony, in which she "confirmed" that she did not like the house and had explained that to buyer. Buyer responds that the contract expressly gave him the right to cancel the transaction based on dissatisfaction with the report, that evidence establishes that he was dissatisfied with the report, and that the existence of other reasons for his dissatisfaction is not a basis to conclude that he acted in bad faith.

 The governing law relating to a party's duty of good faith in the performance of a contract is well settled. Every contract contains an implied covenant of good faith and fair dealing, one that serves to protect the objectively reasonable contractual expectations of the parties. *Stevens*, 154 Or App at 58-59. Significantly, however, that implied covenant cannot contradict an express contractual term, nor otherwise provide a remedy for an unpleasantly motivated act that is permitted expressly by the contract. *Id.*

> "Thus, the terms of a contract help serve to define the objectively reasonable expectations of the parties. As a corollary to that proposition, a party invoking an express contractual right does not, merely by doing so, violate the duty of good faith."

*Id.* (citations omitted).[2] In this context, then, buyer's exercise of his right to terminate the transaction based on his dissatisfaction with the report cannot itself be a breach of any implied duty of good faith and fair dealing; something more and different is required.

In analyzing the summary judgment record, we begin by emphasizing what is not disputed in this case. Sellers do not dispute that the inspection report identified problems with the house. Likewise, they do not dispute that defects (as indicated by, among other things, the gravel under the house, high water, the watermarks on the timbers) required repair. Indeed, by their conduct in making the repairs, sellers implicitly recognized that the house would not be acceptable "as is" and that the sale might be jeopardized if they did not correct the problems identified in the report. Said another way, this is not a circumstance in which the inspection revealed the house to be sound in all respects and in which buyer disapproved of the report notwithstanding that result.

We underscore that aspect of the case because it aids in refining the factual issue that sellers argue precludes summary judgment. Sellers do not contend that the buyer's disapproval of the report was not real. Instead, their only argument is that the disapproval was not buyer's "actual reason for rejecting the contract." That framing of the issue is important. Sellers' argument is only that, despite the problems identified in the inspection, buyer would have purchased the home had his fiancée liked it. In other words, sellers believe that they presented an issue of fact as to whether buyer, but for his fiancée's dislike of the house, would have been content to have the problems repaired and would not have exercised his right to terminate the transaction.

■ The problem with sellers' argument is that the fact on which sellers rely is not *material*. A material fact is one that, under applicable law, might affect the outcome of a case. *See generally Butler v. Vanagas*, 135 Or App 1, 6, 897

<hr />

[2] *See also* the cases cited in *Stevens*, which include, among others, *Uptown Heights Associates v. Seafirst Corp.*, 320 Or 638, 645, 891 P2d 639 (1995), and *Pacific First Bank v. New Morgan Park Corp.*, 319 Or 342, 352-54, 876 P2d 761 (1994).

P2d 1176 (1995). As the trial court concluded, under *Columbia Christian College*, a dispute as to buyer's *motivations* for choosing to exercise his right to terminate the transaction, as opposed to a dispute as to whether the right accrued, is not a fact on which buyer's right to cancel the transaction turns. A brief examination of *Columbia Christian College* is helpful to illustrate the point.

In that case, the buyer's obligation to purchase certain property was conditioned on his success in obtaining "satisfactory zoning." The buyer in fact obtained the zoning he sought, but it was subject to future and unspecified conditions that made it less satisfactory than it might otherwise have been. The buyer then repudiated the contract. In suing to force the buyer to complete the sale, the seller contended that the buyer's "real reason" for repudiating was not that the conditions on the zoning were unacceptable, but that the planned development of the property no longer appeared as economically profitable as it originally had appeared. The Supreme Court declined to require the buyer to complete the transaction, reasoning that, even if the seller's assertions factually were true, legally it would not matter:

> "It is true that where a contract is made subject to the occurrence of a condition to the 'satisfaction' of one party, the party's dissatisfaction must relate to the specific subject matter of the condition. * * * It does not follow, however, that the dissatisfaction with other aspects of the bargain as well means that a party is acting in bad faith. A party may be dissatisfied with a number of aspects of a bargain, some of which allow him to repudiate the contract and some of which do not. If one of the sources of dissatisfaction gives him a right under the contract to repudiate, the fact that there are other sources of dissatisfaction is immaterial."

*Columbia Christian College*, 286 Or at 332-33.

■■ We understand *Columbia Christian College* to stand for the proposition that, where a contract is conditioned on one party's satisfaction with the occurrence of a condition and where that party in fact is not satisfied in that particular regard, the party may invoke the right to cancel the transaction even if other motivations cause him or her to do so. In this case, then, as long as buyer was in fact dissatisfied with

the results of the inspection report, buyer had an unqualified right to rely on that dissatisfaction to cancel the transaction, even if other concerns motivated him to do so. Said another way, buyer had to be genuinely dissatisfied with the inspection report. Once he was, however, he had the unqualified right under the contract to cancel the transaction, even if he had other reasons for exercising that right.

■ Thus, even viewing the evidence in the light most favorable to sellers, the summary judgment record would at most support a determination that "but for" buyer's fiancée's reaction to the house, buyer might have accepted seller's repairs and purchased the home despite the problems identified in the inspection report. That fact, even if found by a factfinder, would be immaterial, however. What is material is whether buyer's dissatisfaction with the results of the inspection was real. In this case, the evidence was not disputed on that point. Buyer was concerned about water-related problems disclosed by the inspection and expressly disapproved the inspection report based on those problems. Indeed, sellers acknowledged the existence of the problems and the legitimacy of buyer's concerns by making repairs. Sellers' reliance on buyer's possible *additional* reasons for terminating the contract is inconsequential. Sellers were obligated to show that buyer did not in fact have concerns about the results of the inspection and did not in fact disapprove the report because of those results. Sellers did not produce any evidence that would permit a factfinder to so find. The trial court therefore correctly granted summary judgment to buyer.

Affirmed.