Argued and submitted February 24, reversed and remanded May 4, 2016

CHEVALIER ADVERTISING, INC.,
an Oregon company,
*Plaintiff-Respondent,*

*v.*

BALLISTA TACTICAL SYSTEMS, INC.,
a Florida corporation,
*Defendant-Appellant.*

Multnomah County Circuit Court
130608927; A157316

373 P3d 1211

Robyn Ridler Aoyagi argued the cause for appellant. With her on the briefs was Tonkon Torp LLP.

Bruce H. Orr argued the cause for respondent. With him on the brief was Wyse Kadish, LLP.

Before Armstrong, Presiding Judge, and Egan, Judge, and Shorr, Judge.

**SHORR, J.**

Plaintiff, an advertising and public relations firm, and defendant, a gun accessory maker, became involved in a dispute over their contract for advertising and marketing services. On appeal, defendant challenges the trial court's decision to grant plaintiff's motion for summary judgment, which the court granted upon concluding that the declarations filed in support of defendant's opposition to summary judgment were substantively inadequate, procedurally defective, or both.

As explained below, we conclude that, under the circumstances, the trial court abused its discretion in refusing to consider a declaration due to a minor claimed defect that plaintiff first raised on the last day of post-hearing supplemental briefing, which did not permit an appropriate correction or response from defendant and was outside the scope of the narrow issue on which the trial court had allowed supplemental briefing. Thus, the court erred in granting plaintiff's affirmative summary judgment motion on that basis. We further conclude that the court erred in alternatively concluding that the same declaration did not create genuine issues of material fact precluding summary judgment. Accordingly, we reverse and remand for further proceedings.

In reviewing a trial court's grant of summary judgment, we view the record in the light most favorable to the nonmoving party and draw all reasonable inferences in its favor. *Jones v. General Motors Corp.*, 325 Or 404, 420, 939 P2d 608 (1997). We describe the facts in accordance with that standard.

In 2012, defendant hired plaintiff to provide marketing and advertising services. Defendant agreed to a $200,000 annual advertising budget, which included a $1,500 monthly fee for public relations services. Plaintiff proceeded to bill defendant about $210,000 for services it purportedly provided in the five months from August to December 2012. Defendant paid plaintiff in full for August but refused to pay subsequent invoices in full because it was dissatisfied with plaintiff's services and billing practices. According to defendant, plaintiff did not provide deliverables consistent

with the charges, and the charges exceeded the agreed-upon budgets and were not supported by appropriate documentation. Defendant informed plaintiff that it was dissatisfied with the charges and asked for more documentation of the work, but its concerns were never addressed by plaintiff, although defendant contacted plaintiff numerous times and did so as those issues arose. Ultimately, defendant decided to pay plaintiff $120,000 for third-party media bills (many of which plaintiff had already received a 15 percent commission on) but not for the in-house service that plaintiff claimed to have provided. Defendant maintained that much of what plaintiff provided was redundant, based largely on existing marketing materials, lacked any documentation of what service, exactly, had been performed, and that the charges were clearly excessive. Defendant also directly paid a third party's $17,000 advertising bill, which plaintiff had passed on to defendant but had not yet paid.

Plaintiff brought this action, alleging breach of contract and *quantum meruit* claims against defendant. Defendant answered that the claims were barred in whole or in part based on plaintiff's prior material breaches of their agreement.

Plaintiff then moved for affirmative summary judgment on the breach of contract claim, asserting that it had a right to payment from defendant based on the contract, its own invoices for its services, and its CEO's declaration that plaintiff actually performed the services and incurred the expenses for which it billed defendant.

Defendant opposed summary judgment, arguing that, because plaintiff materially breached the parties' agreement, it was not entitled to payment. In particular, defendant disputed that it owed the amount alleged by plaintiff, and asserted that plaintiff did not have a right to payment in full because plaintiff had failed to comport with defendant's specific directions about how the payments and work were to be allocated. It also asserted that the service fees plaintiff charged exceeded the agreed-upon estimates.

Defendant submitted two declarations with its memorandum opposing summary judgment: a declaration by

defense counsel and the declaration of defendant's retired CEO, Shawn Johnson. Throughout the remainder of this opinion, we refer to the former as "counsel's first declaration" and to the latter as "Johnson's first declaration." Both declarations were "verified copies" of the original documents. Counsel's first declaration stated, in relevant part, that counsel made the declaration based on personal knowledge, that a "true and correct copy of the executed declaration of Shawn Johnson" was attached, and that Johnson "has mailed me the original, signed declaration, but I have not yet received it," and "will file the original with the Court as soon as we receive it."

We quote Johnson's first declaration in full because it is dispositive of this appeal:

"I, SHAWN JOHNSON, hereby declare as follows:

"1.    I am the former CEO of Defendant Ballista Tactical Systems, Inc. ('Ballista'). I make this declaration based upon personal knowledge about events that occurred while I was CEO of Ballista.

"2.    In 2012, Ballista hired Plaintiff Chevalier Advertising, Inc. ('Chevalier') to help with a marketing campaign. This campaign involved certain branding services and media advertising. Chevalier and Ballista discussed the services that Chevalier would perform, and Chevalier provided estimates to Ballista based on these discussions. Nevertheless, Chevalier's billings for the services it allegedly provided greatly exceeded the estimates it had given to Ballista. When Ballista asked for Chevalier to explain the reasons for the excessive charges, Chevalier's response was incomplete and unsatisfactory.

"3.    Not only were Chevalier's billings beyond the estimates, its work did not meet Ballista's expectations or requirements. Much of Chevalier's work was based on marketing materials previously generated by Ballista. While Chevalier promised to improve upon these materials, it ultimately failed to do so; it charged Ballista thousands of dollars, but added little or no value to Ballista's marketing efforts. Specifically, Chevalier billed Ballista excessive and unjustified charges related to branding work, marketing plan development, creative changes to existing marketing materials, packaging design services, and sell sheet

production. Chevalier also charged Ballista an excessive marketing fee and improperly billed Ballista for amounts that Ballista had previously paid directly to third parties. Ballista objected to these charges when they were billed and continues to object to them.

"4.   After trying unsuccessfully to resolve the billing issue, Ballista informed Chevalier that it would pay only Chevalier's hard costs—i.e., third party fees related to advertising media. Ballista determined those hard costs to be $120,000 and paid Chevalier accordingly—clearly designating how its payment should be applied. Ballista informed Chevalier that it would not pay any further amounts until Chevalier had properly justified its excessive charges. Chevalier never properly justified these charges as requested. Thereafter, one of Chevalier's vendors, Personal Defense Network, informed Ballista that it had not been paid by Chevalier. To ensure that the vendor received the funds it was due, Ballista paid the balance owed ($17,000) directly to the vendor.

"I hereby declare that the above statement is true to the best of my knowledge and belief, and I understand it is made for use as evidence in court and is subject to penalty of perjury."

In reply, plaintiff argued that defendant's showing should not preclude summary judgment because it was not sufficiently specific, did not "establish a foundation for a finding of personal knowledge by Johnson," and consisted "merely of conclusions." In particular, plaintiff argued that Johnson's description of the predicate events was not based on personal knowledge because his declaration was not consistently phrased in the first person. We note, because it is significant to the issues raised on appeal, that plaintiff did not advance any arguments relating to the fact that the first set of declarations submitted by defendant were copies and not the "blue ink" originals.

In response to plaintiff's reply, defendant filed the "supplemental declaration" of Johnson, which was essentially the same as the first one, except that it contained more first person phrasing reiterating that Johnson had indeed personally been involved in all of the matters described in his earlier declaration. Defendant did not concede that

the first Johnson declaration—which Johnson stated was "based upon personal knowledge about events that occurred while I was CEO of Ballista"—was insufficient, but rather maintained that it filed the supplemental declaration out of an abundance of caution and in hopes of taking the "personal knowledge" issue off the table. Like the first Johnson declaration, the supplemental Johnson declaration was filed along with an explanatory declaration by defense counsel, which we refer to as the "supplemental counsel declaration." In it, counsel verified that the supplemental Johnson declaration was a copy of the original document, and that the original document would be filed upon receipt. Both supplemental declarations were filed on May 7, 2014—two days before the May 9 summary judgment hearing.

Because it bears materially on our analysis of the trial court's rejection of the first Johnson declaration, we recount the discourse at the May 9 hearing, as well as the post-hearing supplemental briefing, in some detail. We particularly focus on the drift in plaintiff's and the trial court's procedural concerns over the course of those events. As detailed below, the trial court was initially concerned about whether the supplemental declarations had been timely filed because their May 7 filing did not appear in the trial court's docket system at the May 9 hearing, and deferred its summary judgment ruling for the parties to offer supplemental briefing as to that issue only. Despite that narrow focus on the supplemental declarations, the trial court ultimately disqualified the first set of declarations—which were undisputedly timely filed—based on a different procedural issue that was raised by plaintiff on the last available day for supplemental briefing.

At the May 9 hearing, the parties took the same substantive positions that they had adopted in their written arguments. In addition, after the trial court commented that the supplemental declarations were evidently "not in the file" because they had not yet appeared in the trial court's docket system, plaintiff suggested that the court should not consider them to be "part of this record" for purposes of ORCP 47.

The trial court proceeded to explain that, because it agreed with plaintiff that the first Johnson declaration was

not specific enough to preclude summary judgment, its decision ultimately turned on the supplemental Johnson declaration, which it "reluctantly" concluded was substantively adequate as to Johnson's personal knowledge, but identified as potentially procedurally defective because of the potential late filing.

> "ORCP 47 does provide a higher level of specificity required for a declaration to support an opposition to a summary judgment motion, and it requires the declaration to affirmatively state and reflect that they have personal knowledge.
>
> "And the original declaration that you submitted certainly doesn't do that, in my opinion. It doesn't—I think he's right; there's a different standard and you don't meet it. Declaration number one.
>
> "So then, you know, it comes down in my view to declaration number two. And it apparently just got filed. There was no request that it be accepted or anything. And again, I don't see a signed copy of it, and perhaps you have one there. Is it filed? * * * It concerns me, there's rules, there's a way to do this, there's time frames, and then in comes something over the internet less than 24 hours before the hearing. You know—You know, and there wasn't even a motion to accept a late filing or anything along those lines. It concerns me. But I'm also concerned that perhaps this is sufficient to overcome the specificity objections."

After further discussion concerning whether the supplemental declarations had, in fact, been duly filed and served—and after defense counsel formally requested that the trial court accept them—the trial court reiterated its conclusion that, because the first Johnson declaration was substantively inadequate with respect to demonstrating Johnson's personal knowledge, its decision turned on the supplemental Johnson declaration:

> "[F]rankly, I think the first one doesn't create a genuine issue of fact. And so in my view it probably is going to turn upon whether I do or don't grant your request to a late— to accept a late filing supplemental declaration, and so my question is, is there even such a thing before the Court in proper form—I suppose your opponent got it, and if you say it's on file with the Court in some form or other I'll take your word for it, because I know there's a delay between

getting it from downstairs, upstairs, you know, and into the file."

Thus, despite the court's inability to verify the timely filing of the supplemental declarations in its docketing system, it evidently understood that they had been served on opposing counsel and that the filings' nonappearance in the docket was likely due to a lag in court administrative systems. Accordingly, it announced that it would deny summary judgment.

After the trial court made that ruling, plaintiff expanded the scope of its procedural objection to the supplemental declaration:

"We would object to the second declaration coming in. We don't have the original. It's not on file. It shouldn't be considered. And that's just not—Anyway, they've had enough time to get that on file and, therefore, it's not—should not be considered part of the record on this motion."

In other words, plaintiff argued that, because the "original" version of the supplemental declaration was not "on file," the trial court should not consider it.

The trial court rejected those arguments, explaining that it was adhering to its original approach and would deny summary judgment based on the supplemental Johnson declaration.

Immediately thereafter, plaintiff asked the trial court to "reconsider" its decision on the ground that the supplemental declaration "has not been filed," and therefore is not "part of the record."

The trial court then agreed to hold the record open "until Monday" to allow the parties to "figure out" whether the supplemental declaration had been "filed."

At that point the parties squared off on whether a copy of an original declaration accompanied by an attorney's declaration verifying its provenance was procedurally adequate, with the focus on the validity of the attorney's declaration concerning the provenance of a declaration originally received electronically. Defendant maintained that it was common practice for attorneys to file a signed copy of

a declaration received via fax or email along with an attorney declaration like the ones that were filed in this case. Plaintiff maintained that counsel's second declaration was insufficient because "he doesn't have the original so he can't say, 'I'm certifying that this, in fact, is a copy of the original.' All he's got is a copy." Defendant responded that, if that were true, most attorneys would run afoul of the rules on a regular basis.

The trial court then stated that it would leave the record open to allow the parties to submit additional authorities pertaining to whether the "supplemental declaration of Shawn Johnson" could be considered to be "on the record today," and "whether or not the Court can consider it." The court also instructed the parties that it would not accept a late filing, but rather that it was limiting matters to whether the supplemental declaration could properly be considered to be timely filed.

Thus, the trial court's and plaintiff's procedural qualms with the supplemental declarations of counsel and Johnson did not extend to the first set of declarations. Plaintiff's procedural objections were focused solely on the supplemental declarations. At no point during the hearing did the trial court indicate that it was disqualifying the timely filed original declaration on a procedural or technical ground, and the court repeatedly stated that it left the record open only with respect to the issue of whether the supplemental declaration could be considered as on the record as of the May 9 hearing.

In supplemental briefing filed on May 12, plaintiff elaborated on the procedural arguments that it advanced at the hearing. Plaintiff argued that the supplemental declaration exceeded the deadline set forth by ORCP 47 C (which provides that "[t]he adverse party shall have 20 days in which to serve and file opposing affidavits or declarations") and, therefore, should not be considered to be part of the summary judgment record. Plaintiff also maintained that the supplemental declaration was not "filed" by the time of the hearing.

Defendant responded on May 14. That response established that the supplemental declarations had, in fact,

been filed on May 7, two days before the hearing, and that the delay in the filing appearing in the record was attributable to a transition to a new e-filing system in the court clerk's office.

On May 15, plaintiff filed "Additional Supplemental Points and Authorities." Significantly, plaintiff argued in that brief—for the very first time—that the *first* Johnson declaration should be disqualified on procedural grounds, contending that "neither purported declaration of Mr. Johnson should be considered because the originals of those declarations were not filed with the court by the hearing date," because "ORCP 47 does not allow a party to file copies of declarations."

The trial court issued its decision the next day, May 16. It ruled that plaintiff had established a *prima facie* case for summary judgment and that defendant had not raised any genuine issues of fact in opposition. That ruling was partially based upon the trial court's conclusion that the first Johnson declaration was substantively and procedurally deficient:

> "I find that defendant has not raised any genuine issues of fact, that plaintiff is not entitled to the relief alleged in its complaint as a matter of law. The first declaration of Shawn Johnson did not create a genuine issue of material fact for the reasons set out in plaintiff's briefing.

> "Further, Shawn Johnson's original declaration has never been filed with the court, despite the fact it was signed and purportedly mailed to defense counsel over a month ago. I accept Mr. Weiler's sworn assertion that he would file it as soon as he received it. The fact that it is not received or filed more than a month after its purported execution provides an alternative reason to reject it as a valid opposition to the summary judgment motion under ORCP 47D."

With respect to the supplemental Johnson declaration, the trial court concluded that, although it was sufficient to create a material issue of fact, it would "exercise [its] discretion not to accept the late filing." The trial court subsequently entered a general judgment awarding plaintiff $67,850.06 plus pre- and post-judgment interest and costs.

On appeal, defendant challenges the trial court's rulings as to Johnson's first and supplemental declarations, arguing, among other things, that both declarations created a genuine issue of material fact, that it erroneously disqualified the first Johnson declaration, and that it abused its discretion in refusing to consider the supplemental declaration. As explained below, we agree with defendant that Johnson's first declaration precluded summary judgment. We therefore need not reach the arguments relating to the supplemental declaration.

As described above, the trial court rejected Johnson's first declaration on alternative substantive and procedural bases—concluding that the declaration did not create an issue of material fact, and, alternatively, rejecting it because it was a copy and not the original document bearing the declarant's blue ink signature. Our analysis first addresses how the declaration was, in substance, sufficient to preclude summary judgment. We then consider the trial court's decision to alternatively reject it for the proffered procedural reason.

We review a trial court's decision to grant summary judgment to determine whether there are any genuine issues of material fact and whether the moving party is entitled to judgment as a matter of law. *Jones*, 325 Or at 420. A fact is material if it is "one that, under applicable law, might affect the outcome of a case." *Zygar v. Johnson*, 169 Or App 638, 646, 10 P3d 326 (2000), *rev den*, 331 Or 584 (2001). If the moving party meets its *prima facie* burden, the nonmoving party can defeat summary judgment by demonstrating the existence of a genuine issue of material fact that would allow an objectively reasonable factfinder to return a verdict in its favor. *Jones*, 325 Or at 414-15.

Here, Johnson's first declaration created a genuine issue of material fact that, if true, would allow an objectively reasonable factfinder to side with defendant, and, therefore, precluded summary judgment. Johnson, who had been defendant's CEO and had personally been involved in the dealings with plaintiff during the events in question, stated that, contract and invoices notwithstanding, plaintiff's work and billing practices had been consistently problematic.

Johnson suggested that plaintiff had billed defendant redundantly and excessively, was contracted to create new marketing materials but instead modified existing ones, and had continually billed defendant for those design services each month despite the fact that no design services were actually provided, since the designs had already been created. Furthermore, defendant contracted with plaintiff for $200,000 worth of services over the course of a year, but plaintiff exceeded that figure within five months. Those statements and reasonable inferences create genuine issues of material fact precluding summary judgment.

In explaining why it felt the first Johnson declaration lacked personal knowledge, the trial court referenced Johnson's impersonal phrasing (referring to the events that transpired between "Ballista" and "Chevalier," rather than using first person phrasing), and reasoned that it could not reasonably infer that Johnson personally had knowledge of those events. That approach was not consistent with the applicable standard of review, which requires courts assessing a summary judgment record to draw all reasonable inferences in favor of the nonmoving party. ORCP 47. As recounted above, 278 Or App at 151, Johnson expressly declared:

> "I am the former CEO of Defendant Ballista Tactical Systems, Inc. ('Ballista'). I make this declaration based upon personal knowledge about events that occurred while I was CEO of Ballista."

That statement established that the first Johnson declaration was based upon personal knowledge. Viewing matters in the light most favorable to defendant, it was reasonable to infer, based on that statement, and based on Johnson's former position at the company, that Johnson had personal knowledge of the events described in the declaration. The trial court erred in drawing the contrary inference.

With that, we turn to the trial court's alternative rejection of the first declaration for lack of an original signature. As described at length above, the trial court had concluded (and reiterated) at the May 9 hearing that the first Johnson declaration did not create a triable issue of fact due to the "personal knowledge" issue that we just addressed.

We also reiterate that plaintiff did not raise any argument that the first Johnson declaration was procedurally defective prior to the hearing or during the hearing itself. Nor did the court make any comments pertaining to that issue. The court then kept the record open for supplemental briefing on the sole issue of whether the supplemental Johnson declaration was timely filed. In its post-hearing supplemental briefing, plaintiff went outside the scope of that limitation by arguing, for the very first time, and at the last possible opportunity, that the *first* Johnson declaration should be disqualified because it was a copy, and not the original. *See* UTCR 1.160 ("For every document to be filed * * * the original is to be delivered to the trial court administrator's office."). The trial court then incorporated that argument into its ruling, contradicting its own directive that the scope of the supplemental briefing was limited to the issue of the timeliness of the supplemental declaration, which deprived defendant an opportunity to respond. Under those circumstances, the trial court abused its discretion.

To be sure, trial courts are afforded a wide range of discretion and are certainly entitled to require litigants that appear before them to fully comply with court rules and procedures. *See State v. Rogers*, 330 Or 282, 300-01, 4 P3d 1261 (2000) (observing, "[i]t is well established that a trial court generally possesses broad discretion to control the proceedings before it," and citing various sources and examples of that broad procedural authority). However, in adopting plaintiff's belated and extraneous procedural argument pertaining to the first Johnson declaration without providing defendant an opportunity to address the claimed defect, the trial court abused its discretion. As described above, the court had already repeatedly rejected the first Johnson declaration as insufficient to create a material issue of fact and restricted the post-hearing supplemental briefing to the issue of whether the supplemental declarations were timely filed and could be considered as part of the summary judgment record. Under those circumstances, it was an abuse of discretion to depart from that approach without at least giving defendant a chance to respond. *Cf. Hurlbutt v. Hurlbutt*, 36 Or App 721, 725, 585 P2d 724 (1978), *rev den*, 285 Or 73 (1979) (holding that a trial court has no authority to render

a decision on issues not presented for determination: "The trial court's findings herein which are outside the issues tendered are a nullity."); *Williams v. Haverfield*, 82 Or App 553, 728 P2d 924 (1986) (holding that a trial court erred in disregarding a party's affidavits after it reopened the summary judgment record for reconsideration, having recast the dispositive issue as one that the party would be required to substantiate with evidence, and which the party was not alerted to until after the filing deadline had passed); *Roe v. Doe*, 161 Or App 477, 485-86, 984 P2d 344 (1999), *rev den*, 329 Or 651 (2000) (holding that the losing party at summary judgment may not belatedly submit additional evidence so as to create a genuine issue of material fact after the fact); ORCP 12 B (instructing that "[t]he court shall, in every stage of an action, disregard any error or defect in the pleadings or proceedings which does not affect the substantial rights of the adverse party").

In sum, the trial court abused its discretion in resolving a summary judgment issue on what was, at most, a minor technical defect[1] that was raised belatedly, was patently outside the scope of what the court had previously stated it would consider post-hearing, and which defendant had no reason to anticipate and no opportunity to address.

For those reasons, the trial court erred in disregarding the first Johnson declaration, as well as in concluding that the declaration did not create a genuine issue of material fact. Accordingly, because the first Johnson declaration was substantively and procedurally sufficient, the court erred in granting plaintiff's motion for summary judgment.

Reversed and remanded.

---

[1] Indeed, given the advent of mandatory electronic filing, already implemented in most counties and soon be implemented statewide, this particular issue is unlikely to arise again. *See* UTCR 21.090; UTCR 21.120; UTCR 21.140 (setting out rules pertaining to electronic signatures, the certification of original signatures when filing electronically, and mandatory electronic filing).