Argued and submitted August 18,
reversed and remanded with instructions October 20,
reconsideration denied December 23, 1980,
petition for review denied February 18, 1981 (290 Or 491)

LONG,

*Appellant, Cross-Respondent,*

*v.*

WAYBLE, et al,

*Respondents, Cross-Appellants.*

(No. 77-6-433, CA 15989)

618 P2d 22

George O. Tamblyn, Portland, argued the cause for appellant, cross-respondent. With him on the briefs was Robin Marie Quon, Portland.

James B. Richardson, Beaverton, argued the cause and filed the briefs for respondents, cross-appellants.

Before Richardson, Presiding Judge, and Thornton and Buttler, Judges.

THORNTON, J.

## THORNTON, J.

Plaintiff appeals from a decree in favor of defendants on plaintiff's suit for specific performance of a "first right of refusal" clause in a written lease agreement. Plaintiff contends the clause empowers him to purchase the building in which he leases space from defendants by virtue of defendants' attempt to sell the building. Defendants cross-appeal from the trial court's rejection of defendants' affirmative defense that the provision is not enforceable in any case because the lease was entered into in defendant-husband's name only and he had no authority to enter into the lease agreement on his wife's behalf.

The essential facts are not in dispute. Plaintiff operated an art gallery on the leased premises since 1962. In June, 1972, plaintiff sought to negotiate a new five-year lease with defendants, who had recently purchased the building in which the gallery and two other businesses were located. Defendants, who lived in California and Arizona, sent plaintiff a printed standard form lease agreement for a five-year term. Plaintiff testified that it was important for his business and the artists he represented that he remain in his established location for as long as possible. He therefore attempted to add to the standard form lease a provision calling for an option to renew the lease for an additional five-year term with an adjustment in rent for tax increases, signed the lease and returned it to defendants. Defendant-husband crossed out that proposed term and added one of his own:

> "Lessor agrees to give lessee first right of refusal on purchase of this property * * * at an asking price of $35,000."

When plaintiff received this new version he took the document to his attorney, who recommended that the purchase price be undesignated because he felt $35,000 was excessive at that time. Defendants believed the property could bring as much as $42,500 and refused to back off from their figure of $35,000. Thereupon, plaintiff agreed and initialed the new term.

The lease began to run on July 1, 1972. In March, 1977, a few months before the lease was to terminate, defendants decided to sell the property and entered into a listing agreement, asking $49,900. Plaintiff saw the property advertised in a Lake Oswego paper and attempted through his attorney to exercise his "right of first refusal." Defendants thereupon withdrew the property from the market and declined to sell to plaintiff for less than $45,000. Plaintiff then brought this suit.

The trial court found that defendants were under no obligation to market the property and had the right to remove the property from the market once they learned of plaintiff's intent to exercise his rights under the lease.

Although there was some discussion of the matter by the parties, it is clear that the language in question does not create an absolute option in plaintiff to purchase the property, but rather a so-called "right of first refusal" or "right of pre-emption." The distinction between the two is set forth in 77 Am Jur 2d, *Vendor and Purchaser* § 49 (1975):

> "Unlike an option, a pre-emptive right does not give the pre-emptioner the power to compel an unwilling owner to sell; it merely requires the owner, when and if he decides to sell, to offer the property first to the person entitled to the pre-emptive right at the stipulated price. There is no doubt that an agreement based on a consideration to give the promisee the refusal or first right to purchase in case the landowner wishes to sell at a fixed price or at a price which may be made certain, while of less value than an ordinary option to purchase, is valid and binding on the landowner."

■ The dispute in this case concerns whether the act of listing the property for sale satisfies the condition precedent to plaintiff's right to purchase the property—that defendants be willing to sell. Defendants contend that listing the property is not an offer to sell, but merely an invitation to make an offer, and that plaintiff's right does not come into play until some third party makes an offer acceptable to defendant.

They cite numerous cases to that effect. *Dalton v. Balum,* 13 Wash App 160, 534 P2d 56 (1975); *Gill v. Livingston,* 158 Fla 577, 29 So 2d 631 (1947); Annotation, 34 ALR 2d 1158 (1954). In those cases, the clause creating the right of first refusal did not specify any particular price at which the owner would be willing to sell, should he later decide to do so. In such cases, the owner's willingness to sell is conditioned upon getting an acceptable price for the property at the time he makes the decision to sell and an offer from a third party is necessary to establish that price (unless the owner has otherwise indicated what price he considers acceptable). *See Dalton v. Balum, supra* (preemptive right satisfied where owner first offered land to holder of such right at $500 per acre, which was rejected, and then sold to third party at same price).

■   In this case, we conclude that the clause is clear that, if defendants decided to sell the property at all, they would first offer it to plaintiff for $35,000.

Corbin discusses this situation:

> "If B pays a consideration for a Right of First Refusal, he is buying a right that under stated circumstances O shall make him an offer that will give him an Option to Purchase. The terms of that offer need not be stated but they must in some way be indicated with sufficient clearness for enforcement. Of course, the property that is the subject of purchase must be described; and the price must be stated or otherwise made determinable. Suppose that O promises B a Right of First Refusal at $2,000. Here, before selling at that price O must offer to sell to B for $2,000; and in case of breach B's remedy will be plain and clear. But if C offers $5,000 for the property, must O before accepting now offer to sell to B for $2,000? The answer is yes, in the absence of evidence that the parties otherwise intended." 1A Corbin on Contracts 469-70, § 261 (1963).

The signed agency authorization to sell the property and the listing agreement which, *inter alia,* authorized the realtor to accept a deposit and create an escrow for closing the sale are sufficient to establish defendants' willingness to sell. Indeed, defendant-husband never denied his desire to sell but testified he

had forgotten about the first refusal clause in the lease until he was reminded by a phone call from plaintiff's attorney notifying him that plaintiff intended to exercise his option. The fact that defendants may, in retrospect, have made a bad bargain is immaterial.

■ We reject defendants' further contention that the clause requires them to offer the property to plaintiff only if they should decide to sell the property for $35,000. First, assuming the clause is ambiguous and susceptible to such a construction, there was no testimony by defendant-husband that such was his intent; he complained that the price was too low in light of inflation and refused to be bound by the provision. Second, to the extent ambiguity remains in the provision, we construe it against defendants, who drafted it. *Derenco v. Benj. Franklin Fed. Sav. and Loan,* 281 Or 533, 552, 577 P2d 477 (1978). Finally, such a construction is unreasonable since, by offering the property for $36,000, the defendants could circumvent entirely plaintiff's right to purchase, thereby rendering the provision illusory.

Once defendants manifested a willingness to sell and did not retract that intent prior to plaintiff's acceptance of the option created in him, they became bound to sell the property at the specified price and could not later circumvent that obligation by withdrawing the property from the market. *See Quigley v. Capolongo,* 53 App Div 2d 714, 383 NYS2d 935 (1976). *See also Scheile v. Fordyce,* 47 Or App 535, 543-44, 614 P2d 1217 (1980) (where defendant verbally extended option beyond its stated termination date, he became bound by its terms once plaintiff accepted the offer before it was retracted).

■ We turn to defendants' cross-appeal, which assigns error to the trial court's rejection after trial on the merits of their affirmative defense that the lease did not bear the signature of the wife, a joint owner of the property, and therefore the agreement as to the right of first refusal was not enforceable, absent proof that husband was authorized to act as wife's agent. Husband's testimony was that he discussed everything

concerning joint property dealings with his wife, a long-time invalid, and that, at one time, they held a great deal of property jointly. He could not recall whether the lease or the specific lease provision had been discussed. It was not disputed that plaintiff regularly paid his rent and that defendants accepted such payments without objection.

Defendants rely on *Alldrin v. Lucas,* 260 Or 373, 490 P2d 141 (1971), for the proposition that, to be bound in this situation, wife must have impliedly authorized or subsequently ratified husband's acts. Here, however, the wife did so by accepting the rental payments. *Accord: Young v. Neill,* 190 Or 161, 220 P2d 89, 225 P2d 66 (1950); *Culver v. Rendahl,* 211 Or 682, 318 P2d 275 (1957). *See also Gaffi v. Burns,* 278 Or 327, 332, 563 P2d 726 (1977).

Specific performance of the right of first refusal should have been decreed.

Reversed and remanded with instructions to enter a decree of specific performance.