Argued and submitted September 29, 2004, reversed March 22, 2006

John FLYNN,
*Respondent,*

*v.*

John HANNA,
deceased,
*Defendant,*

*and*

Mildred HANNA,
*Appellant.*

00CV187; A121635

131 P3d 844

Stephen F. Crew argued the cause for appellants. With him on the briefs were T. Chad Plaster and Ramis Crew Corrigan & Bachrach, LLP.

Douglas E. Hojem argued the cause for respondent. With him on the brief were Patricia Sullivan and Corey, Byler, Rew, Lorenzen & Hojem, LLP.

Andrea L. Bushnell and Matt Farmer filed the brief *amicus curiae* for Oregon Association of REALTORS®.

Before Haselton, Presiding Judge, and Linder and Ortega, Judges

ORTEGA, J.

## ORTEGA, J.

Defendant Mildred Hanna appeals from the trial court's judgment requiring her and her husband, defendant John Hanna, specifically to perform an agreement to sell their 1,885-acre ranch to plaintiff John Flynn.[1] On *de novo* review,[2] we conclude that plaintiff was not entitled to specific performance of his agreement with defendants. Accordingly, we reverse.

Defendants leased a portion of their ranch to plaintiff. The lease gave plaintiff a right of first refusal should defendants decide to sell all or any part of the ranch "on the terms and conditions set forth in this Agreement" and "at the same price and on the same terms and conditions as are contained in the Offer * * *."[3] The right of first refusal varied from the terms of the offer only in imposing the additional term that "the closing of the transaction contemplated by the Offer [would] take place no earlier than 90 days after" plaintiff exercised the right of first refusal.

Defendants were advancing in age and decided that it was time to sell their ranch. They contacted a real estate agent, Molloy, about listing the ranch for sale and, after some discussion with Molloy, signed a listing agreement for the ranch with an asking price of $400,000. The listing agreement provided that any offer on the property would be contingent upon [defendants'] accountant and attorney approval." Molloy had recommended that defendants obtain such advice before making a final decision on any offers because of the size of the ranch and the "many different facets" connected with it.

---

[1] John Hanna died before trial, leaving Mildred Hanna as the sole owner of the property and the lone remaining defendant. Nevertheless, we refer to defendants in the plural.

[2] *See Dewing v. Western Smelting & Metals, Inc.*, 135 Or App 397, 400, 898 P2d 224, *rev den*, 322 Or 167 (1995) (a judgment for specific performance is reviewed *de novo*).

[3] Plaintiff's lease was for just under 80 acres of the 1,885-acre ranch. He contended, and the trial court agreed, that his right of first refusal applied not just to the acreage covered by his lease but to the entire ranch. Defendants have argued on appeal that, even if plaintiff is entitled to specific performance, his right of first refusal extended only to the 80 acres that he actually leased. Because we conclude that plaintiff was not entitled to specific performance, we do not reach that issue.

On August 30, 2000, the day after the listing became effective, a potential buyer, Kilkenny, contacted Molloy and offered to buy the ranch for $405,000. Molloy and Kilkenny prepared a real estate sale agreement that specified that Molloy was acting as the agent for both Kilkenny and defendants. The addendum to the agreement contained a review clause that Molloy drafted, stating, "BUYER & SELLER reserve[ ] the right to have their attorney and accountants approve this transaction." Molloy included this provision for the same reason that she had included it in the listing agreement, and, indeed, Kilkenny wanted to have the same opportunity for attorney and accountant review. The addendum also disclosed plaintiff's right of first refusal.

When Molloy informed defendants of Kilkenny's offer, they were reluctant to sign the sale agreement. Molloy advised them, however, that if their attorney or accountant did not approve the transaction, they would not be bound to go through with the transaction. Defendants then signed the sale agreement.

Molloy advised defendants to notify plaintiff of the sale agreement. As instructed, defendants wrote to plaintiff informing him that they had put the ranch on the market. They also told him in the letter that they had a "bid" on the ranch and directed him to notify Molloy if he was interested. Plaintiff contacted Molloy after he received the letter, and she gave him a copy of the sale agreement.

Shortly after writing to plaintiff, defendants called Molloy to find out if they could raise the asking price for the ranch because they were concerned that the price was too low.[4] Molloy advised that they could raise the price, inasmuch as neither their attorney nor their accountant had approved the agreement. Defendants then instructed Molloy to raise the price to $525,000, and Molloy changed the listing to reflect that price increase.

---

[4] Defendants' concern arose as a result of a telephone conversation with a real estate appraiser, Burns, who advised that the ranch was worth more than the price that defendants had included in the listing.

On September 6, a week after Kilkenny made his offer, defendants signed addendum B to the sale agreement, which Molloy had prepared and which provided:

"We are herewith cancelling the offer named above from * * * Kilkenny as we have been advised the price is not enough. The price is now to be $525,000.00, and still subject to the first right [sic] of refusal and final approval of transaction of buyer's and seller's attorn[eys] and accountants."

Molloy then sent a copy of addendum B to plaintiff, also informing him that defendants were not accepting Kilkenny's offer of $405,000 and were "proceeding to find another buyer and will let you know when [they] do." Meanwhile, plaintiff met with an attorney and instructed him to exercise the right of first refusal. The attorney sent defendants a letter notifying them that plaintiff was exercising his right of first refusal and included a check for the earnest money.[5] At about the same time, defendants received a letter from Kilkenny's attorney, in response to the notice of the price increase, advising defendants that Kilkenny had a binding and enforceable contract to purchase the ranch.

Defendants were concerned because both Kilkenny and plaintiff were asserting an enforceable right to purchase the ranch at the price of $405,000. As a result, and because John Hanna was scheduled to undergo surgery in a few days, defendants decided to take the ranch off the market. On September 17, they signed a note stating that "[a]s of today 9-17-00 we are withdrawing our ranch * * * from the market."

Hanna was hospitalized the next day, and Molloy advised both plaintiff and Kilkenny in writing that he had been hospitalized and that the ranch was off the market. Hanna was discharged from the hospital four days later but

---

[5] Molloy testified that, when she initially met with plaintiff, she gave him a copy of the listing agreement reflecting the increased price. Plaintiff, however, testified that at that meeting with Molloy, the change in price was not discussed, and that he did not receive notice from Molloy that defendants had increased the price until after the letter from his attorney to defendants exercising the right of first refusal had already been sent. On the other hand, the amended complaint alleges that plaintiff received notice of the price increase the day before he exercised his right of first refusal. Our disposition of this case does not require us to resolve that discrepancy.

was experiencing some problems with his medication, which caused him confusion and made it difficult for him to communicate.

On October 3, plaintiff's attorney wrote to defendants, notifying them that plaintiff intended to initiate legal action to enforce his right of first refusal and the sale of the property to him. Defendants, meanwhile, met with Burns, the appraiser with whom they had earlier discussed the value of the ranch. Burns advised them that they needed to consult with an attorney in view of the sale agreement and other documents they had shown him. Burns thought that defendants seemed confused about the status of the sale of their ranch.

Soon after meeting with Burns, defendants met with Hadley, an attorney, to have him review the sale agreement. They told Hadley that it was their "goal" to sell the ranch, that "[t]hey were in the process of selling it," but that they needed legal help. They showed Hadley the documents that they had obtained pertaining to the sale. Hadley made another appointment with defendants for three days later to continue their discussion.

Using a real estate checklist that he had been using for several years, Hadley formed the opinion that he could not approve the transaction with the existing sale agreement for several reasons. For example, the sale agreement did not reserve oil and gas rights on the property, although defendants had intended to keep them, and their intent was mentioned in a listing document. Defendants also needed to reserve water rights in connection with the oil and gas rights, but those rights also were not addressed in the sale agreement. The property description and property lines were inadequately documented, and the sale agreement was for the sale of residential property, not ranch property. Moreover, the agreement did not comply with Oregon law regarding disclosures and disclaimers.

Hadley prepared a written account of his objections to the agreement and addressed it to Crew, a second attorney retained by defendants. Crew, in turn, notified plaintiff's attorney in writing on October 30:

"The Addendum provides that the Agreement is conditional on the approval of [defendants'] lawyer and accountant. Please be advised that [defendants'] lawyer and accountant did not approve the transaction."

As a result, Crew advised, there had been a "failure of a condition precedent" as to plaintiff's right of first refusal and defendants would "not be proceeding to close this transaction." The following day, plaintiff initiated this action seeking specific performance of his claimed right to purchase the ranch under the terms of the sale agreement.

At trial, plaintiff asserted that the lack of attorney approval of the sale agreement did not constitute the failure of a condition precedent and that defendants were not entitled to invoke the attorney approval clause to avoid the agreement in any event. The trial court generally accepted plaintiff's arguments, holding that there was no failure of any condition precedent and that plaintiff was entitled to specific performance.

The gravamen of plaintiff's claim is that defendants breached the lease by refusing to sell him the ranch under the terms of the sale agreement.[6] The sale agreement reserved to the parties the right to have the agreement approved by their attorney and accountant. Plaintiff acknowledges that, in exercising his right of first refusal, he stepped into the shoes of Kilkenny, the original offeror, and assumed the same rights and obligations that Kilkenny had obtained. Plaintiff thus had the right to have his attorney and accountant approve the agreement and was obligated to respect defendants' right to do the same. Defendants' duty to perform (that is, to close the sale under the terms of the sale agreement) could not arise until December 2000, 90 days after plaintiff exercised his right of first refusal. Accordingly,

---

[6] When plaintiff filed his original complaint in November 2000, any duty of defendants to sell the ranch was only executory; the duty imposed by the agreement was to close the sale of the ranch and, under the terms of plaintiff's right of first refusal, that duty could not arise until 90 days after plaintiff exercised his right. Because plaintiff exercised his right in September 2000, defendant's duty to perform—and any actual breach—could not occur until December 2000. However, we treat as moot the lack of maturity of the breach of contract claim contained in the original complaint because, by the time that plaintiff filed his amended complaint, the closing date had passed and any breach had become actual.

defendants contend that they retained their right to obtain attorney and accountant approval at the time they purported to exercise it in October, more than a month before the deadline for closing, and that the lack of such attorney approval provided a basis for defendants to refuse to perform the sale agreement. Indeed, they contend that the lack of attorney approval constituted the failure of a condition precedent to their duty to perform.

Plaintiff advances six arguments against that view, and we address each in turn. First, plaintiff contends that there was no failure of a condition precedent because attorney approval was not required under the sale agreement. Here, the parties merely "reserve[d] the right" to obtain such review and approval by an attorney, and plaintiff contends that such a reservation is insufficient to give rise to a condition precedent to defendants' performance of the agreement. That argument might be persuasive where a party declines to exercise such a discretionary right—but here defendants in fact did exercise their right of attorney approval. The fact that they could have proceeded without doing so does not suggest that the exercise of that right was without consequence to their duty to perform the agreement.

At oral argument, however, plaintiff argued for the first time that defendants could not rely on the exercise of their discretionary right to attorney approval because, at most, that right created a *condition subsequent* to defendants' duty to perform. According to plaintiff, defendants, having pleaded only the failure of a condition precedent, could not rely on a right that created only a condition subsequent. Leaving aside whether plaintiff can properly raise that argument now, we conclude that, in any event, the argument lacks merit.

At the outset, we note that defendants' affirmative defense did not expressly state that there had been a failure of a condition precedent but rather that there had been a failure of a condition. We do agree with plaintiff, however, that the facts alleged in support of the affirmative defense appear to plead a condition precedent rather than a condition subsequent. The affirmative defense alleged that the agreement

to sell "was conditional on the review and approval of defendants' lawyer and defendants' accountant" and that "[t]he sale agreement was not approved by defendants' lawyer and accountant." As pleaded, the defense suggested that an event (attorney approval) *must occur* in order for plaintiff to be able to enforce defendants' obligation to perform the contract, which appears to be more consistent with the definition of a condition precedent than a condition subsequent. *See Dan Bunn, Inc. v. Brown*, 285 Or 131, 142-43, 590 P2d 209 (1979) (" 'Conditions precedent' are those facts and events, occurring subsequently to the making of a valid contract, that must exist or occur before there is a right to immediate performance, before there is a breach of contract duty, before the usual judicial remedies are available." (Citation and internal quotation marks omitted.)). Plaintiff posits, however, that the attorney approval clause is, at most, a condition subsequent because it does not *require* attorney approval.

Oregon case law generally holds that a court is unable to award relief outside the pleadings of the case. *See, e.g., Cole v. Fogel et al*, 210 Or 257, 265, 310 P2d 315 (1957) ("[T]he fact that both sides have ignored the pleadings does not justify the court in awarding relief outside the issues of the case."); *Cheryl Wilcox Property Management v. Appel*, 110 Or App 90, 94, 821 P2d 428 (1991) (in a forcible entry and detainer action, the court lacked authority to award a landlord money damages where no claim for money damages was made in the complaint). There is, however, an exception to that general rule. ORCP 12 B provides that "[t]he court shall, in every stage of an action, disregard any error or defect in the pleadings or proceedings which does not affect the substantial rights of the adverse party." *See also Schroeder v. Schaefer*, 258 Or 444, 465-67, 483 P2d 818 (1971) (applying that rule—at that time numbered as ORS 16.660—in determining that the plaintiffs could be awarded *quantum meruit* relief on their claim for payment for legal services, even though they had pleaded only a claim based on a written attorney fee agreement, because the defendants had acknowledged at trial that the court could consider a *quantum meruit* theory for awarding damages and had argued in their brief that the proof was insufficient to award damages on that basis).

Here, whether the attorney approval clause was a condition precedent or a condition subsequent,[7] plaintiff knew at trial that defendants were arguing that, under its terms and given the facts, they were entitled to avoid the agreement. Under these circumstances, we conclude that the pleading defect, if any, did not affect plaintiff's substantial rights. Accordingly, ORCP 12 B compels us to disregard any such defect.

As is apparent from our earlier discussion, we are not persuaded that defendants were precluded from refusing to perform the sale agreement merely because the attorney approval clause does not require such approval. The discretionary nature of the clause would be significant only if there were no evidence showing that an attorney had reviewed the agreement. In that event, a party could not seek to avoid its obligations under the agreement by asserting a lack of attorney approval. Here, defendants had the right to have their attorney review the agreement and exercised that right. We therefore reject plaintiff's first argument.

Plaintiff next argues that defendants' attorney did not, in fact, disapprove the agreement, citing evidence that Hadley continued his investigation until defendants finally instructed him to stop work. We reject that argument.

---

[7] This case illustrates the confusion generated by relying too heavily on labels such as "condition precedent" or "condition subsequent." Indeed, the *Restatement (Second) of Contracts* has jettisoned the distinction because the terminology "has long been criticized and has caused confusion * * *." *Restatement (Second) of Contracts* § 224 reporter's note (1981). Here, the attorney approval clause is at least arguably in the nature of a condition precedent, except that it springs into being only if asserted by one of the parties. Even in that sense, it is little different from many other conditions that parties place into real estate agreements and other contracts for their own protection. A common example of such a condition is the buyer's receipt of a satisfactory dry rot report. *See generally Zygar v. Johnson*, 169 Or App 638, 10 P3d 326 (2000), *rev den*, 331 Or 584 (2001). The condition may be stated in mandatory terms, but a buyer has control over whether to assert the failure of the condition. In that sense, whether the clause is expressed as "subject to a dry rot report satisfactory to buyer," or "buyer has the right to receive a dry rot report acceptable to buyer," is in fact of little moment, practically speaking. In either case, the buyer may announce his intention not to perform the contract on receipt of an unsatisfactory dry rot report. Indeed, even if the report is unsatisfactory, the buyer may decide to proceed with the contract. The same is true for the attorney approval clause at issue here. Defendants had the right, at their discretion, to have their attorney review and approve the agreement. But even if the clause had been expressed in mandatory terms, they could have chosen to waive their right to have their attorney review and approve the agreement.

Hadley's testimony was emphatic that he did not approve the agreement because it was deficient in several respects. Indeed, he testified that it would have been "malpractice" for him to have approved the agreement. The disapproval of defendant's attorney was communicated to plaintiff just before plaintiff initiated this action. It appears to us from the record that Hadley's continuing investigation, later halted by defendants, was directed not at approval of the sale agreement but at reviewing the issues that would need to be addressed in order for defendants to conduct a successful sale of the ranch in any event.

Plaintiff's third argument is that the agreement contemplated that attorney disapproval would relieve the parties from performing only as to those matters that the parties could not work out between them. He contends that, even though the original parties to the sale agreement may have intended that attorney disapproval would relieve the parties of their duty to perform regardless of the basis for the disapproval, that intent was not communicated to him and it is the objective manifestation of the parties' intent, rather than their subjective, uncommunicated intent, that governs.

The first problem with plaintiff's argument is that the objective manifestation of the parties' intent—the language of the attorney approval clause—does not impose the requirement of further negotiation for which plaintiff advocates. It reads, "BUYER & SELLER reserve[ ] the right to have their attorney and accountants approve this transaction." Moreover, nothing in the circumstances surrounding the formation of the sales contract suggests that there is any latent ambiguity. *See generally Batzer Construction, Inc. v. Boyer*, 204 Or App 309, 317, 129 P3d 773 (2006) (the trial court may consider the circumstances surrounding contract formation to determine whether a particular contractual provision is ambiguous). Rather, defendants, Kilkenny, and their shared agent, Molloy, all agreed that the clause was inserted for the parties' protection and was intended to enable them to get out of the agreement if anything was unsatisfactory. In light of the uncontradicted testimony and the absence of language in the agreement inconsistent with it, we conclude that the parties did not intend the attorney

approval clause to be limited by an obligation to engage in further negotiation.

We reject plaintiff's argument that this interpretation of the agreement should be rejected because it was not communicated to him. That argument is not based on an "objective" theory, but rather on what plaintiff subjectively believed the clause permitted. But plaintiff's subjective belief does not control; he stepped into Kilkenny's shoes when he attempted to exercise his right of first refusal. Plaintiff therefore was not in a position to complain that the intentions of the parties to the agreement were not communicated to him.

Plaintiff's fourth argument is that the attorney approval clause should be construed against defendants because their agent, Molloy, drafted the agreement. However, Molloy was not only defendants' agent but also Kilkenny's. Kilkenny, therefore, would not have been able to argue that, because Molloy drafted the agreement, it should be construed against defendants. Plaintiff, having stepped into Kilkenny's shoes when he exercised his right of first refusal, is similarly constrained.

We likewise find no support for plaintiff's fifth argument—that defendants were required to exercise their right to have their attorney review the agreement before they notified plaintiff that they had received an offer on the ranch, because the sale agreement became binding and enforceable as to him at the point that he exercised his right of first refusal. The notification to plaintiff was intended simply to give him the option of taking Kilkenny's place as the prospective buyer. As we have emphasized, by attempting to exercise his right of first refusal, plaintiff acquired only the rights that Kilkenny had. At most, Kilkenny had the right to insist that defendants must exercise their right to have their attorney review the agreement within a reasonable time. However, plaintiff does not contend that defendants waited more than a reasonable period of time to exercise their right to attorney review; he argues only that they were required to consult with their attorney before they notified him of the Kilkenny offer. He has cited no authority in support of that argument, and we reject it.

This brings us to plaintiff's final argument, which requires us to consider the legal effect, if any, of defendants' actions in attempting to raise the price of the ranch and to take it off the market before they sought attorney review of the sale agreement. Plaintiff contends that, in so doing, defendants repudiated the agreement and thereby forfeited their right to rely on their attorney's disapproval as a basis for avoiding the agreement. He contends also that defendants were acting in bad faith in seeking attorney review and that their reliance on their attorney's disapproval of the agreement was merely an improper attempt to find support for the decision they had already made.

The only authority plaintiff cites that arguably supports his forfeiture argument is *Long v. Wayble*, 48 Or App 851, 857, 618 P2d 22 (1980). Plaintiff cites *Long* for the proposition that all of the essential terms of the agreement to sell the ranch were in place and that, once that occurred, defendants were obligated to sell the ranch at the specified price and other terms set forth in the sale agreement. Once that obligation arose, plaintiff contends, defendants could not "circumvent that obligation by either raising the price of the ranch or taking the ranch off the market."

Assuming *arguendo* that plaintiff is correct that defendants could not unilaterally raise the price of the ranch or take it off the market after they had accepted Kilkenny's offer, that would establish only that defendants had repudiated their executory duties under the agreement. That is, their breach was at most an anticipatory breach. Their duty to sell the property to plaintiff would not ripen until the time set for closing and, even then, that duty was subject to their timely exercise of the right to attorney review and approval of the agreement.

The circumstances in *Long*, on the other hand, are distinguishable. There, a lessee had a right of first refusal to purchase the subject property for $35,000. The lessor listed the property for sale for more than $35,000, and the lessee sought to exercise his right. On learning of the lessee's exercise of the right, the lessor attempted to withdraw the property from the market. This court held, however, that the lessor's act of listing the property manifested the lessor's intent

to sell the property, triggering the lessee's right to buy the property for $35,000. By the terms of the right of first refusal, once the lessee exercised that right, the lessor was contractually bound to sell the property for $35,000 to the lessee and could not thereafter withdraw the property without breaching the lease agreement. 48 Or App at 856. Accordingly, the court in *Long* was construing the terms of the particular right of first refusal at issue, not establishing a general rule applicable to the circumstances at issue here.

Plaintiff's argument not only lacks legal support but also is inconsistent with plaintiff's attempt to require defendants to specifically perform the agreement. By seeking specific performance, rather than damages for breach, plaintiff is attempting to enforce the agreement, which includes the right of the parties to have their attorneys review and approve it. Plaintiff does not contend that the agreement itself specifies that the right to obtain attorney review is forfeited if one party repudiates the agreement. Accordingly, it is inconsistent for plaintiff to seek both to enforce the agreement and to avoid one or more of its provisions based on the conduct of one of the parties, where the agreement itself does not specify that consequence.[8]

We also conclude that the record falls far short of demonstrating that defendants acted in bad faith in exercising their right to have their attorney approve the transaction. Although defendants did attempt, first, to raise the price and, second, to take the ranch off the market, they did so after being advised by their real estate agent that such action was

---

[8] The *Restatement (Second) of Contracts* likewise provides no authority for plaintiff's position. Section 255, comment a, provides generally that where a condition fails after a party has repudiated the contract, but the repudiation did not materially contribute to the condition's failure, the nonoccurrence of the condition is not excused, and both parties are discharged. Section 256 further provides that if a party retracts a repudiation of the contract before performance is due, the other party has no claim for anticipatory breach unless he materially changed his position in reliance on the repudiation before it was retracted. We need not determine in this case whether defendants had gone so far as to retract any repudiation by the time they met with their attorney. We do conclude, however, that their allegedly repudiating actions did not directly or indirectly cause their attorney to disapprove the agreement and, thus, did not cause the condition to fail, for the same reasons that we also conclude below that defendants did not act in bad faith.

within their rights under the agreement. There is no evidence that they attempted to take these actions with knowledge that they were repudiating their contractual obligations.

Even assuming for the sake of argument that defendants' reliance on their real estate agent was objectively unreasonable and therefore in bad faith,[9] we still must determine whether defendants acted contrary to the reasonable expectations of the parties in seeking their attorney's review. As we have explained, the duty of good faith and fair dealing in contractual matters "cannot contradict an express contractual term, nor does it provide a remedy for an unpleasantly motivated act that is permitted expressly by contract." *Stevens v. Foren*, 154 Or App 52, 58, 959 P2d 1008, *rev den*, 327 Or 554 (1998) (concluding that the sellers of real property did not breach their implied duty of good faith and fair dealing by insisting that optionees under a right of first refusal comply with a provision contained in the prospective buyers' offer to purchase requiring that a residence be built on the property within a specified time period). Indeed, we will not examine the true motives of a party who exercises rights under a contract in order to escape its legal obligations. Accordingly, in *Zygar v. Johnson*, 169 Or App 638, 648, 10 P3d 326 (2000), *rev den*, 331 Or 584 (2001), we held that a purchaser did not breach his contractual duty in refusing to proceed with a real estate purchase when the purchase was conditioned on the purchaser obtaining a satisfactory dry rot report and the purchaser was not satisfied with the dry rot report, even though he may have had other reasons for repudiating the agreement. Whatever reasons the purchaser may have had for wanting out of the transaction were immaterial to the question of whether he, in fact, was dissatisfied with the dry rot report.[10]

---

[9] *See, e.g., U.S. National Bank v. Boge*, 311 Or 550, 556, 814 P2d 1082 (1991) (stating that the duty of good faith implied under the common law "requires that parties act in an objectively reasonable manner in the performance and enforcement of their contracts").

[10] We based our decision in *Zygar* on *Columbia Christian College v. Commonwealth*, 286 Or 321, 594 P2d 401, *reh'g den*, 286 Or 669 (1979). There, the Supreme Court explained:

"It is true that where a contract is made subject to the occurrence of a condition to the 'satisfaction' of one party, the party's dissatisfaction must relate to

Here, the sale agreement expressly provided for defendants to seek their attorney's review. Even assuming that their motivation for doing so was the hope that their attorney would disapprove the agreement, their act of seeking review was not a violation of their duty of good faith, because it was expressly permitted. And even assuming it would have been bad faith for them to have told their attorney that they wanted him to disapprove the contract so that they could get out of the transaction, there is no evidence that they gave their attorney such an instruction.[11]

Defendants had the right—but were not required—to have their attorney review the agreement. And they had the right—but were not required—to refuse to proceed with the agreement if their attorney did not approve it. In this matter, their rights were comparable to those of the purchaser in *Zygar*. The purchaser there had the right—but was not required—to obtain a dry rot report and, if he chose to obtain one and it proved to be unsatisfactory, he had the right—but was not required—to avoid the agreement. It is immaterial here, as it was in *Zygar*, what defendants' true motivations may have been for refusing to proceed with the sale of their ranch under the terms of the sale agreement, so long as their attorney in fact disapproved that agreement.

Reversed.

---

the specific subject matter of the condition. *Western Hills v. Pfau*, 265 Or 137, 144-45, 508 P2d 201 (1973). It does not follow, however, that dissatisfaction with other aspects of the bargain as well means a party is acting in bad faith. A party may be dissatisfied with a number of aspects of a bargain, some of which allow him to repudiate the contract and some of which do not. If one of the sources of dissatisfaction gives him a right under the contract to repudiate, the fact that there are other sources of dissatisfaction is immaterial.

"* * * * *

"Upon de novo review of the evidence present at trial, we conclude that defendant's dissatisfaction with the zoning was in good faith. The fact that this dissatisfaction also was tied to the economics of the project as a whole does not mean defendant acted in bad faith."

286 Or at 332-33.

[11] This case is therefore distinguishable from *McKenna v. Case*, 507 NYS2d 777, 123 AD2d 517 (1986), on which plaintiff relies. There, the court found that a seller, relying on an attorney approval case, had acted in bad faith by instructing his attorney to disapprove the contract.